T.C. Memo. 2000-155

UNITED STATES TAX COURT

JAMES L. AND EVA J. DOWNS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1991-99.                          Filed May 10, 2000.

James L. Downs, pro se.

<u>Rodney J. Bartlett</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  Respondent issued a notice
of deficiency to petitioners for the taxable years 1982 and 1983.
In the notice, respondent determined that petitioners were liable
for additions to tax for negligence pursuant to section
6653(a)(1)[1] of $464 and $8 for 1982 and 1983, respectively, and
under section 6653(a)(2) for 50 percent of the interest due on

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue.

$9,286 and $162, respectively. Respondent also determined an addition to tax for a substantial understatement of tax under section 6661(a) of $2,322 for 1982.

The issues for decision are: (1) Whether petitioners are liable for the additions to tax for negligence or intentional disregard of rules or regulations pursuant to section 6653(a)(1) and (2) for both years; and (2) whether petitioners are liable for the addition to tax for a substantial understatement of tax under section 6661(a) for 1982.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Dana Point, California, at the time they filed their petition.

During the years at issue, James L. Downs (petitioner) was a corporate officer and major shareholder of Carburetor Sales and Services, Inc., and Eva J. Downs was employed as a teacher. Petitioner received a degree in business education in the 1970's. Petitioners had been active in the stock market for a number of years, and they also invested in several real estate limited partnerships through a broker.

In 1982, petitioner attended a lecture given by Consolidated Financial Services, Inc. (CFS), at the University of Southern California (USC). Petitioners' son was a student at USC, and he

told them about the lecture. CFS offered financial planning, and petitioner spoke with Keith Maynes (Mr. Maynes), CFS's financial planner, on several occasions. Mr. Maynes proposed an investment in a limited partnership called Utah Jojoba I Research (Utah Jojoba I) which would engage in the farming of jojoba plants.

Petitioner read articles on prospective business for jojoba oil and its many uses. Petitioners received a "Private Placement Memorandum" (the prospectus) to review. According to the prospectus, dated November 10, 1982, the cost to invest was $8,480 per unit with a minimum of four units per investor. For each unit, the investor was to pay cash of $2,500 and execute a promissory note for the remainder, payable annually for 10 years. On the front page of the prospectus, it is stated that the offering involved a high degree of risk. The prospectus also contained the following statements: "Investors are urged to consult their own counsel as to all matters concerning this investment" and "Each purchaser of units herein should and is expected to consult with his own tax advisor as to the tax aspects." The prospectus also cautioned about agricultural risks and warned that there was no structured market for jojoba oil and there were limited processing facilities.

Petitioner scanned the prospectus but did not read it carefully. He did not seek any outside professional advice because he has "always made his own judgments on these things".

Petitioner knew it was a high-risk investment, and he considered the cautions in the prospectus about the risks to be standard language.

On November 19, 1982, petitioners signed a "Subscription Agreement", a "Promissory Note", and a "Limited Guarantee Agreement".  In the Subscription Agreement, petitioners purchased four units in the partnership and agreed to pay $10,000.  In the Promissory Note petitioners promised to make yearly payments over the next 10 years to the partnership for a total of $23,920.

About 6 months after investing in the partnership, petitioner drove out to Desert Center, California, where the jojoba plantation was located.  To him, it looked like the plantation was flourishing.  A few months after the visit to the plantation, petitioner visited the offices of CFS in Salt Lake City, Utah, which looked reputable to him.  During the years at issue, petitioner did not have much contact with the partnership. In 1983, pursuant to the promissory note, petitioners made a payment to the partnership of $2,600.

On their 1982 Federal income tax return, petitioners reported income of $116,522, and claimed a partnership loss of $20,919 from Utah Jojoba I.[2]  On their 1983 Federal income tax return, petitioners reported income of $110,000 and claimed a

---

[2]  There also were other losses claimed in this year from other investments.

partnership loss of $810 from Utah Jojoba I. In a partnership proceeding, Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, the Court determined that the partnership's claimed loss deductions for 1982 and 1983 were not allowable. The resultant adjustments to petitioners' 1982 and 1983 Federal income taxes resulted in deficiencies of $9,286 and $162, respectively. See sec. 6225.

Validity of Notice of Deficiency.

Petitioners contend that they were unaware that the Utah Jojoba I partnership was being audited and that there was litigation in the Tax Court. Petitioners claim that they received no correspondence from the Commissioner or from the tax matters partner until they were notified of the computational adjustment resulting from the partnership level proceeding. While it is not clear, it appears that petitioners are claiming that the notice of deficiency for the affected items is invalid. Petitioners contend that if they had been notified about the audit and litigation, they would have "taken care of the matter at an earlier date" instead of having to deal currently with the additions to tax and accrued interest.

Petitioners rely on a letter found in respondent's file. The letter was prepared by the Internal Revenue Service (IRS) and addressed to 13723 Walnut Street, Whittier, CA (the Walnut Street address). A copy of an envelope attached to the letter bears a

stamp reflecting that it was returned because the forwarding order had expired for the Walnut Street address. Petitioners had moved from Walnut Street in 1984 to 24672 Jeremiah Drive, Dana Point, California (Jeremiah Drive address). The letter states that the IRS was beginning an examination of the Utah Jojoba I partnership for tax year 1983. There is no clear date on the letter, but it is stamped as "Received" by the TEFRA/tax shelter section of the IRS on July 25, 1986, presumably the date it was returned as undeliverable.

Section 6223 requires the Commissioner to send the notice of beginning administrative proceeding (NBAP) and the notice of final partnership administrative adjustment (FPAA) to each partner whose name is furnished to the Commissioner. Under subsection (c) of that section, unless additional information is provided by the tax matters partner, the Commissioner is required to use the address shown on the partnership return in mailing the NBAP and the FPAA. The Walnut Street address is shown on petitioners' 1982 and 1983 Federal income tax returns as well as on the Schedules K-1 for Utah Jojoba I for 1982 and 1983. There is no indication that respondent was advised of any different address for petitioners in accordance with section 6223(c)(2). Therefore, there was no error on behalf of respondent regarding the NBAP.

In a letter dated October 9, 1999, from James Elliott, Chief of Appeals, to Congressman Packard, Mr. Elliott states:

> Our records show that * * * [petitioners] were mailed a certified notice of the partnership audit on July 14, 1986. * * * [Petitioners] were also mailed certified notices of final partnership adjustments on April 9, 1990. These notices were mailed to them at 24672 Jeremian Drive, Dana Point, California. (We realize that the address on the 1986 and 1990 letters [varies] slightly from * * * [petitioners'] address at 24672 Jeremiah.)

He furthers states that the other partners were also issued notices, that the tax matters partner filed a petition with the Tax Court, and that "On June 29, 1990, our office also sent a letter to the taxpayers offering a settlement of the government conceding the penalties if the taxpayer conceded the tax. In TEFRA cases, the tax matters partner has the responsibility to keep all partners informed of the progress of the case."

The record does not reflect when respondent was advised of petitioners' Jeremiah Drive address nor, except for petitioner's self-serving testimony, whether the FPAA was returned to respondent as undeliverable.

Once partnership level proceedings are completed, the Commissioner is permitted to assess a computational adjustment against a partner without issuing a deficiency notice. See sec. 6230(a)(1); N.C.F. Energy Partners v. Commissioner, 89 T.C. 741, 744 (1987). This must have occurred sometime between the date the opinion for Utah Jojoba I Research v. Commissioner, supra, was filed (January 5, 1998) and the date the instant notice of

deficiency was sent to petitioners.  The notice of deficiency, dated  October 30, 1998, was mailed to petitioners at the misspelled Jeremian Drive address, and, subsequently, petitioners timely petitioned this Court.  We assume that petitioners also received notice of the computational adjustment at the misspelled Jeremian Drive address.

In Crowell v. Commissioner, 102 T.C. 683 (1994), the Court held that a taxpayer may contest the validity of a notice of deficiency for affected items on the ground that the taxpayer's partnership items converted to nonpartnership items by virtue of the Commissioner's alleged failure to properly notify the taxpayer of partnership level proceedings.

As stated earlier, we do not find that respondent erred in failing to notify petitioners about the beginning of the partnership audit.  Furthermore, although the address on the FPAA was slightly misspelled, petitioners have received mail addressed to Jeremian (sic) Drive.  Insignificant typographical errors in an address will not prevent a letter or notice from being valid. See McMullen v. Commissioner, T.C. Memo. 1989-455; Riley v. Commissioner, T.C. Memo. 1985-231.  Therefore, we hold that respondent notified petitioners of the partnership proceeding as required by section 6223(a), and the notice of deficiency herein is valid.

Negligence

Section 6653(a)(1) and (2) imposes additions to tax if any part of the underpayment of the tax is due to negligence or intentional disregard of rules or regulations. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985). "When considering the negligence addition, we evaluate the particular facts of each case, judging the relative sophistication of the taxpayers as well as the manner in which the taxpayers approached their investment." Turner v. Commissioner, T.C. Memo. 1995-363.

Petitioner contends that, although he is not a professional, he thought that he reasonably investigated the investment, and he was seeking a long-term investment, not merely a tax-sheltered one.

Petitioners have not demonstrated that they reasonably investigated their investment in the Utah Jojoba I partnership. Petitioner discussed the investment with Mr. Maynes, knowing that CFS was receiving a commission for the sale of the limited partner interests. Therefore, the only person he discussed the investment with was someone who had an economic interest in the investment. Petitioners did not seek professional advice from outside sources which was recommended in the prospectus.

Petitioner did not read the prospectus carefully, and he thought the cautionary language therein was standard. Petitioners did not have any expertise in or knowledge of jojoba farming, and they did not seek the advice of an expert in this area.

Petitioners did not investigate the bona fides of the investment. It was only after the investment that petitioner visited the plantation and the offices, but it seems he was merely looking at the appearance of the locations to determine whether they were reputable.

We do not find that petitioners are naive investors. They invested in the stock market for a number of years, and they also participated in limited partnerships several times. Petitioners had total wages in excess of $100,000 for each year, and they have not established that tax savings was not a motivating factor. We conclude that if petitioners were looking to make a long-term profit, they would have investigated the jojoba investment more thoroughly because of the high risk and lack of a market for the oil.

On the record before us, we find that petitioners were negligent, and we sustain respondent's determination.

## Substantial Understatement of Tax

Respondent determined that petitioners were liable under section 6661(a) for a substantial understatement of tax for 1982.

Section 6661(a) provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement. An understatement is substantial when the understatement for the taxable year exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000. The understatement is reduced to the extent that the taxpayer (1) has adequately disclosed his or her position or (2) has substantial authority for the tax treatment of an item. See sec. 6661(b); sec. 1.6661-6(a), Income Tax Regs.

Petitioners made no argument that there was adequate disclosure, nor have they produced substantial authority for their position. The deficiency upon which the addition to tax was imposed was $9,286. The understatement is substantial because it exceeds the greater or $5,000 or 10 percent of the amount required to be shown on the return. Accordingly, we sustain respondent's determination.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.